# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LEROY A. ROMERO,

    Plaintiff,

v.                                                            Civil No. 97-1196 BB/WWD

KENNETH S. APFEL,
Commission of Social
Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

1.    This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed October 23, 1998 [11-1]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff was 42 years old at the time of the June 14, 1995 hearing, and alleges a disability which commenced November 15, 1990 due to low back pain. Mr. Romero has a 12th grade education and past work experience as a maintenance man and as a firefighter.

2.    The history of Plaintiff's November 1991 application is as follows. Administrative Law Judge ("ALJ") Connor found Mr. Romero not to be disabled and capable of performing a full range of light work despite his complaints of back pain. On review, the Appeals Council remanded the case back for a second hearing, to reassess credibility and consider psychological evidence.

3. ALJ Connor held a second hearing in January 1994 and came to the same conclusion, that Mr. Romero was not disabled. The Appeals Council remanded the case yet another time to obtain more evidence on Plaintiff's back impairment and residual functional capacity, including vocational testimony if necessary. This decision was based on the fact that in the interim Plaintiff had back surgery, and on additional evidence in the form of statements from two orthopedic surgeons. The Appeals Council assigned the case to a different ALJ on remand.

4. ALJ Boltz conducted the hearing in June 1995. He found that Mr. Romero was disabled and that he met a listed impairment (§ 1.05), but *only* from March 18, 1994, and not prior to that time. This time the Appeals Council denied Plaintiff's request for review of ALJ Boltz' decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

5. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

6. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) lack of substantial evidence to support ALJ Boltz' partial affirmance of ALJ Connor's two denials where the Appeals Council had vacated both decisions; (2) lack of substantial evidence to support ALJ Boltz' finding that Plaintiff was not totally disabled *before* his back surgery, but was totally disabled thereafter; (3) ALJ Boltz erred in not finding that Plaintiff met a listed impairment, in

2

light of statements made by Drs. Narayan and Lies; and (4) ALJ Boltz erred by failing to combine the substantial impairments of a psychological nature and Plaintiff's severe back injury.

7. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A)) & 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

8. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted).

9. Mr. Romero injured his back in February 1989 in a work-related incident. He has not worked since November 1990. Tr. at 127.[1] His back pain is described as worsening with sitting, walking, bending or lifting and is relieved with bed rest. Occasionally he has numbness down the left leg. Id. He has been diagnosed with chronic low back pain and left-sided disc herniation.

---

[1] Plaintiff returned to work for about a year and a half after recuperating a few weeks from the initial injury. Tr. at 127.

3

Tr. at 130. In his appeal, Plaintiff is not challenging ALJ Boltz' finding that he was disabled after March 18, 1994, but is disputing the finding that he was not disabled prior to that time.

**First Alleged Error**

10. Plaintiff alleges that there was an absence of substantial evidence to support ALJ Boltz' partial affirmance of ALJ Connor's two denials where the Appeals Council had vacated both decisions. However, the fact that ALJ Connor's decisions were vacated and remanded, each time for different reasons, does not mandate a finding of disability on remand. What is necessary is that ALJ Boltz' decision be based on substantial evidence from the record. Also, the Appeals Council did not remand the case for the findings regarding the period of time before Plaintiff's surgery. Thus, that part of ALJ Connor's decision was not found to be deficient and was not vacated.

11. I find that ALJ Boltz' decision was based on his inquiry into the record as a whole. I note that the issues upon second remand were limited to obtaining additional evidence relevant to the time period following Plaintiff's back surgery on April 27, 1994. Tr. at 254. ALJ Boltz' analysis of the record prior to that time period relied in part on ALJ Connor's findings on the previous hearing. Tr. at 21. Thus, because an ALJ's decision is reviewed for substantial evidence, based on "the record viewed as a whole," the adequacy of ALJ Connor's findings are relevant to the period of time Plaintiff is alleging he should have been found disabled. O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (citing Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir.1994).

12. ALJ Connor's decision combed the record thoroughly. Tr. at 226-240. Her findings were based in part on the medical reports of Plaintiff's treating physicians Dr. Jones and Dr.

4

Caldwell. Both physicians noted a left L4-5 disc herniation, Tr. at 125, 130, 156. 162-63, but did not place any restrictions other than adjustments to the level of work. In fact, in March 1991, Dr. Jones recommended Mr. Romero as capable of returning to unlimited activities, or "at least light duty at work." Tr. at 160. In February 1992, Dr. Jones again recommended that Plaintiff return to work "without restrictions as soon as can be done." Tr. at 158. See Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995) (noting that it was significant that plaintiff's doctors encouraged him to return to work).

13. The opinion of Dr. Christian was appropriately discounted, given not only the fact that Dr. Christian is a chiropractor, but also because the report itself was internally inconsistent. See Eggleston v. Bowen, 851 F.2d 1244, 1246-47 (10th Cir. 1988) (ALJ can reject physician's opinion when there are inconsistencies between or among that physician's reports); 20 C.F.R. §§404.1513 & 416.913 (chiropractors are not "acceptable sources" for medical opinions except to help ALJ understand how impairment affects ability to work). In September 1990, Dr. Christian reported that Plaintiff was able to work, to sit or stand for 2 hours, walk for 4 hours, lift 25 pounds frequently and 50 pounds occasionally (Tr. at 138-39) but then in February 1991 pronounced him to be "totally disabled." Tr. at 132.

14. The medical findings also supported ALJ Connor's conclusion that Mr. Romero's back impairment did not meet or equal a listed impairment. Tr. at 231. The ALJ noted that on physical exam, Plaintiff did not exhibit either a significant limitation to range of motion, nor muscle spasm, both of which are required under the listing. 20 C.F.R. Pt.404, Subpt.P, App.1, § 1.05 (C); Tr. at 129, 162-63.

15. Findings related to residual functional capacity are tied to credibility findings. If Plaintiff were found to be credible, his complaints of disabling pain, his need for several hot showers daily and to nap six or eight times a day for 15 to 20 minutes would erode the basis for the hypotheticals the ALJ posed to the vocational expert.

16. ALJ Connor based a credibility analysis on a look at several factors relating to Plaintiff's subjective complaints, including the "levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993).

17. The credibility determination was based on substantial evidence. Although the existence of pain was reported as consistent with "failed treatment for a disc injury," Tr. at 72, Plaintiff's reports of disabling pain were not supported or consistent with the medical findings, some of which are discussed above. See Eggleston v. Bowen, 851 F.2d 1244, 1246-47 (10th Cir. 1988) (finding of noncredibility can be based on claimant's inconsistent answers to some questions and fact that assertions were at odds with much of the medical evidence in the case). His need for naps was not reported to any of the physicians nor corroborated in any of the treatment notes. See Smallwood v. Chater, 65 F.3d 87, 88 (8th Cir. 1995); Hanna v. Chater, 930 F.Supp. 378, 389 (N.D.Iowa 1996) (need for naps should be corroborated).

18. Further, there is some evidence in the record that one of Plaintiff's treating physicians thought he might be exaggerating his symptoms of pain. Tr. at 130, 159; see Broadbent v. Harris,

698 F.2d 407, 413 (10th Cir. 1983) (noting that consulting physician suspected plaintiff of exaggerating degree of numbness). ALJ Connors noted a correlation between Mr. Romero's cessation in the seeking of medical treatment and the settlement of his workers' compensation case. Tr. at 233.[2] She also noted that at least before July 1991, Mr. Romero was using only Advil for pain.[3]

19. Although ALJ Boltz did not conduct a separate credibility inquiry, relying instead on the one done by ALJ Connor, he did note an inconsistency between the functional limitations stated by the Plaintiff himself at the last hearing and those stated at a previous hearing. Tr. at 56-58. Plaintiff told ALJ Boltz that he could sit or stand for 15 or 20 minutes, but at an earlier hearing in October 1992, but he conceded that he had earlier testified that he could stand for an hour to an hour and a half, lift 10 to 15 pounds and walk 100 feet. Tr. at 327. These inconsistencies were also noted by ALJ Connor. Tr. at 235.

20. Because Plaintiff's reported symptoms cannot be taken as true in their entirety, the vocational hypotheticals adequately reflect the state of the record, contrary to Plaintiff's contentions. See Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (questions posed to vocational expert need only reflect impairments and limitations that are borne out by the evidentiary record). A VE was present at both the second and third hearings. ALJ Boltz posed

---

[2] The lapse in medical treatment was also noted at the third hearing before ALJ Boltz. Tr. at 62.

[3] The record does contain evidence that Plaintiff was treated sporadically with Motrin and Dolobid given to him by Dr. Jones. Tr. at 161, 164. However, prior to the time Plaintiff was found to be disabled, there is no evidence of medication prescribed for pain, see Tr. at 313 (noting that Plaintiff was not on any pain medication) although later records mention anti-hypertensive medication and other anti-inflammatories. See Tr. at 206, 255, 159.

7

several hypotheticals to the VE, which included restrictions which were based on Plaintiff's own reported functional limitations: ability to sit or stand for 20 minutes, walk about a block and lift not more than 10 pounds.[4]

21. The hypotheticals included additional restrictions based on a psychological report by Richard Fink, Ph.D. dated March 1993. These restrictions were a limited concentration and attention due to Plaintiff's symptoms, chronic pain syndrome and attendant depression. Tr. at 194. The VE testified that there were still a significant number of jobs in the sedentary or light work range which allowed alternating positions, which Plaintiff could perform. These included parking lot attendant, non-emergency dispatcher, surveillance monitor and information clerk. Tr. at 76-77. However, ALJ Boltz omitted the jobs of dispatcher and surveillance monitor which are semiskilled in nature because he found the Plaintiff limited to unskilled work activities.

22. Plaintiff objects to the ALJ's use of the VE's testimony from the second hearing. However, the ALJ use of earlier VE testimony was conservative and tailored to be specific to Plaintiff's situation. He found that Plaintiff could still perform certain positions selected by the earlier VE (such as stone setter, eyeglass frame polisher and parking lot attendant) because they had been included under a set of more significant restrictions. Tr. at 24-25, 431. Thus, Plaintiff's objections to the ALJ's reliance on these latter findings have no merit. Further, although the earlier VE testimony was not made part of the record at the third hearing, it was subject to cross-examination at the time of the earlier hearing. Tr. at 432.

---

[4] Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day. SSR 83-10; 20 C.F.R. § 404.1567(a). The regulations do not specify that the length of sitting time is to be continuous or uninterrupted by changes in posture.

8

23. I find that there was substantial evidence to support ALJ Boltz' partial affirmance of ALJ Connor's findings where these were findings on issues which had not been remanded and where the findings on noncredibility as well as residual functional capacity were based on the relevant medical findings in the record as a whole.

**Second Alleged Error**

24. Plaintiff contends that there was a lack of substantial evidence to support ALJ Boltz' finding that Plaintiff was not totally disabled *before* his back surgery, but was totally disabled thereafter. ALJ Boltz' decision that Plaintiff was disabled for the period after March 18, 1994 does not invalidate his findings that Plaintiff was *not* disabled prior to that time. First, back surgery can cause a patient's condition to become worse. Tr. at 63. This happened here. Second, the record contains medical evidence of new medical findings which were first noted about a month before surgery.

25. At the third hearing before ALJ Boltz, Dr. George Dixon was on hand as a medical expert. His opinion was consistent both with the medical findings prior to March 18, 1994 discussed above and also with ALJ Boltz' decision that the additional evidence relating to the time period following surgery supported a finding of disability at step two. Plaintiff's visit to Dr. Narayan in March 1994 had revealed a new finding that was "very significant" -- a weak left foot which meant that nerve root pressure had increased and that Mr. Romero's clinical picture had deteriorated. Tr. at 63, 66.

26. Dr. Dixon also opined that a review of the reported clinical findings showed that after surgery, Plaintiff could do only one-fifth of the activities (related to self-grooming and daily activities) which he was able to do three months before surgery. Tr. at 63. The medical evidence

in exam reports and treatment notes supported the conclusion that although Mr. Romero did not meet a listed impairment before March 18, 1994, he did afterwards. Tr. at 67, 70.

27. Plaintiff relies on two pieces of documentation which have questionable value to the time period before March 18, 1994. One is a statement (clearly prepared by Plaintiff's counsel) signed by Dr. Narayan and dated May 22, 1995, stating that Plaintiff's condition meets or equals § 1.05 of the listed impairments "from December of 1990." However, a diagnosis without supporting medical findings is not sufficient to establish disability. See Puckett v. Chater, 100 F.3d 730, 733 n.2 (10th Cir. 1996) (an impairment is not considered a listed impairment based on a diagnosis of a listed impairment; it must also have the medical findings shown in the listing of that impairment); 20 C.F.R. § 404.1525(d).

28. Further, Dr. Narayan's findings regarding Plaintiff's condition when he saw Plaintiff are not relevant to a much earlier time period. Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991) (citing Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985)) (proffered evidence must be related to the time period for which the benefits were denied). In fact, those findings are not consistent with those of Dr. Jones and Dr. Caldwell who were his treating physicians during the period before March 18, 1994. Therefore, the ALJ did not err by according this evidence minimal weight. Tr. at 22-23, 255.

29. The second piece of evidence, Dr. Bert Lies' report, actually works against Plaintiff's contentions since it shows Plaintiff to be able to do much more than Plaintiff contends. According to the functional capacity evaluation which was done by Dr. Lies in April 1995, Mr. Romero is capable of sitting, standing and walking for 4 hours (1 hour without interruption), lifting 10 pounds frequently and 25 pounds occasionally, and working in the light duty category if he could

10

be retrained.  Tr. at 270, 271-22.  The ALJ and his medical expert found this to be inconsistent with all the other medical findings in the record.  Tr. at 22, 65.  Therefore, I find that ALJ Boltz's findings that Plaintiff was disabled after March 18, 1994 but not before, is supported by substantial evidence.

**Third Alleged Error**

30.  Plaintiff alleges that ALJ Boltz erred in not finding that Plaintiff met a listed impairment, in light of statements made by Dr. Narayan and Dr. Lies.  This allegation has no merit, based on my findings, above, in ¶¶ 29, 30 regarding these reports, and in ¶¶ 26, 27 regarding the new evidence shown in the medical findings upon Plaintiff's clinical exam shortly before his surgery.

**Fourth Alleged Error**

31.  Plaintiff last alleges that ALJ Boltz erred by failing to combine the substantial impairments of a psychological nature and Plaintiff's severe back injury.  The ALJ noted that he was treated for depression since 1993, Tr. at 22, but that the impairment did not meet or equal a listed impairment. ALJ Boltz incorporated ALJ Connor's analysis of Plaintiff's mental impairment, specifically Dr. Richard Fink's psychological evaluation.  Tr. at 21, 229.  ALJ Connor stated that Dr. Fink's diagnosis of "mild to moderate" depression was not supported by substantial evidence, in light of the other medical reports in the record.  Dr. Fink opined that Plaintiff's chronic pain had begun to "overwhelm his marginal coping resources."  Tr. at 195.

32.  Prior to 1993, there was no evidence that Plaintiff had sought counseling or that he was prescribed any kind of treatment for depression, although he saw Dr. Sanazaro ( who was

11

supposed to have prescribed anti-depressant medication) after seeing Dr. Fink. Tr. at 215.[5] The first indication that Plaintiff was prescribed an anti-depressant was in March 1994 by Dr. Narayan. Tr. at 303. Plaintiff was given the opportunity to add to the record any documentation which would satisfy his burden of showing that he had a severe mental impairment, but failed to do so. Tr. at 228; Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991) (burden of proof initially rests on the claimant to show he is disabled).

33. Both ALJ Connor and ALJ Boltz considered Plaintiff's mental impairment and found that he had not offered any evidence that his mental impairment was severe in that it would significantly affect his ability to work. ALJ Boltz also figured Plaintiff's depression in the hypothetical as a restriction described as decreased attention and concentration due to chronic pain. Tr. at 76.

34. In sum, I find that (1) ALJ Boltz' partial affirmance of ALJ Connor's findings was based on substantial evidence; (2) substantial evidence supported ALJ Boltz' finding that Plaintiff was not totally disabled *before* his back surgery, but was totally disabled thereafter; (3) ALJ Boltz did not err in finding that Plaintiff did not meet a listed impairment prior to March 18, 1994, in light of statements made by Drs. Narayan and Lies; and (4) ALJ Boltz did not err by finding that a combination of impairments did not render Plaintiff disabled.

**Recommendation**

---

[5] Treatment notes from the latter part of 1994 reveal that rejection for disability applications was a main source of depression for Plaintiff. Tr. at 295-97.

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[11-1]** be denied and this cause of action dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE